## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CHARLES L. JONES,

Petitioner,

v.                              CASE NO.  12-3055-SAC

JAMES HEIMGARTNER,
et al.,

Respondents.

### MEMORANDUM AND ORDER

The court previously screened this federal habeas corpus petition, tentatively found facts indicating it is untimely, and ordered Mr. Jones to show cause why this action should not be dismissed as time-barred.  Mr. Jones filed a Response (Doc. 8) in which he argued that this petition should not be dismissed as time-barred because it is an amendment to his prior petition that is entitled to a file date of March 28, 2003, pursuant to the prison mailbox rule.  He also argued that he is entitled to equitable tolling because he diligently pursued his claims and reargued that he is entitled to the actual innocence and miscarriage of justice exceptions.  The court issued a limited show cause order to respondents, who filed a Response to Order (Doc. 16) contending that the petition is time-barred.  Respondents also filed a Motion to Dismiss for failure to exhaust state remedies.  Petitioner responded to both and filed

1

a Motion for Stay and Abeyance.  Having considered all materials filed, the court dismisses this action as time-barred.[1]

## FACTUAL BACKGROUND

In 2000, Mr. Jones was convicted upon trial by jury of First Degree Premeditated Murder and sentenced to "Life without parole for 25 years."[2]  His conviction was affirmed on direct appeal and his petition for writ of certiorari was denied by the United States Supreme Court on October 21, 2002.

On July 9, 2004, Mr. Jones filed his first state post-conviction motion pursuant to K.S.A. 60-1507.  The motion was denied as untimely, the denial was reversed on appeal, and

---

[1]    The court acknowledges that this is petitioner's first federal habeas petition, and "[d]ismissal of a first federal habeas petition is a particularly serious matter."  *Case v. Hatch*, 731 F.3d 1015, 1036 (10th Cir. 2013)(alteration in original)(quoting *House v. Bell*, 547 U.S. 518, 539 (2006))(internal quotation marks omitted).

[2]    On direct appeal, the KSC "outlined the overwhelming evidence in this case:"

> Four eyewitnesses consistently described the events leading to Trzok's death. Three of those witnesses were able to identify Jones. Consistent with the four eyewitnesses, Jones' companion that night, Tensley, testified he and Jones beat and dragged Trzok out of the house. Importantly, the DNA evidence established that Trzok's blood was on Jones' shoe. Last, while the statements of Jones' aunt established motive, the State had already established motive through Tensley's testimony. Tensley established that he and Jones stopped at Fields' house because the car belonging to the person who had robbed Jones was parked there.

*Jones v. State*, 321 P.3d 799, 2014 WL 136327 (Kan.App. Apr. 4, 2014)(hereinafter "*Jones* IV")(quoting *State v. Jones*, 273 Kan. 756, 757-58, 47 P.3d 783 (Kan. 2002))(hereinafter "*Jones* I").  "The victim was shot three times in the back of the head causing his immediate death."  *Jones* I, at 758.

counsel was appointed.[3]   The district court then held an evidentiary hearing and denied the petition on the merits.   Mr. Jones appealed to the Kansas Court of Appeals (KCA), which affirmed on March 27, 2009.   *Jones v. State*, 203 P.3d 739 (Kan.App. 2009)(hereinafter "*Jones* II").   The Kansas Supreme Court (KSC) denied review on January 7, 2010.

In June 2009 while petitioner's prior collateral appeal was pending, Mr. Jones filed a Motion to Correct Illegal Sentence pursuant to K.S.A. § 22-3504(1).   The trial court summarily denied relief.   Petitioner appealed to the KSC, which according to him "conducted a de novo review."   The KSC affirmed on August 12, 2011.   *State v. Jones*, 257 P.3d 268, 269 (Kan.

---

[3]     Upon ordering reversal, the KCA found as follows:

On June 29, 2004, Jones filed a request with prison officials to approve the mailing of a 60-1507 motion.   This request was approved by a unit team supervisor on June 30, 2004, and by accounting on July 1, 2004.   The 60-1507 motion was actually file-stamped by the Wyandotte County District Court on July 9, 2004.

The district court applied the state statute of limitations literally and ruled that the 60-1507 petition was filed 20 months late.   However, the KCA held that since the limitations statute applicable to 60-1507 motions became effective July 1, 2003, and Jones' claims were preexisting, the limitations period began running on the date of the statute's enactment.   Thus Jones had until July 1, 2004, to file his 60-1507 motion.   The KCA also held that the mailbox rule could apply so that the motion could be deemed filed when Jones delivered it to prison officials rather than when it was file-stamped by the clerk of the court on July 9, 2004.   The KCA knew Jones had requested postage on June 29, 2004, but was "uncertain when Jones actually delivered his 60-1507 motion to prison officials."   They remanded "for a determination of the date upon which the motion was delivered to prison authorities" with directions to "proceed to the merits of the motion" if "that date was on or before July 1, 2004."   However, upon remand, the district court did not consider the timeliness of the motion and instead proceeded to a hearing on the merits.

*Jones v. State*, 120 P.3d 381, *2, 2005 WL 2416069 (Kan.App. Sept. 30, 2005).

2011)(hereinafter "*Jones* III").  Petitioner filed a petition for writ of certiorari, which the U.S. Supreme Court denied on January 17, 2012.

On February 24, 2012, Mr. Jones executed this 52-page petition containing 17 claims with over 50 pages of attached exhibits.

Unbeknownst to this court, on November 1, 2012, Mr. Jones filed another motion pursuant to K.S.A. 60-1507, which the state appellate court recently described as "his fourth attack on his conviction." *Jones IV*, 321 P.3d at 799, *1.

Upon screening the instant petition, this court found that petitioner's conviction became "final" on October 21, 2002; that the statutory one-year limitations period commenced the following day; and that the time ran unimpeded until it expired on or about October 22, 2003.  Thus, Mr. Jones did not file a tolling-type motion until 8½ months after the federal limitations period expired.

Petitioner filed a Response (Doc. 8), two supplements, and two motions.  The court entered a show cause order to respondents limited to the question of whether or not this petition should be dismissed as time-barred.  Respondents filed a Response to Order (Doc. 16) arguing that the instant petition is time-barred, to which petitioner filed a reply (Doc. 17). Respondents later filed a Motion to Dismiss (Doc. 18) as time-

4

barred or for failure to exhaust, having discovered Mr. Jones'
collateral appeal currently pending in state court.[4]  In response
to the Motion to Dismiss, Mr. Jones filed a Response (Doc. 19)
and a Motion for Stay and Abeyance (Doc. 20).

## DISCUSSION

Mr. Jones argued in his federal petition that its
untimeliness should be excused because on March 28, 2003, he
"filed a 2254 petition and motion to stay & abeyance to exhaust
state remedies" in this court that was never decided, and that
the instant petition is an amendment that relates back to his
2003 petition.  The court found that these allegations were not
adequately substantiated and were refuted by its own records
containing no evidence of any filing in federal court by Mr.
Jones in 2003 or any year prior to 2012.  In addition, the court
noted that a premature federal petition filed in 2003 would have
had no tolling effect upon the statute of limitations.  The
court rejected petitioner's amendment argument and his
assertions of actual innocence and fundamental miscarriage of
justice.  The standards for equitable tolling were set forth,
and Mr. Jones was given the opportunity to allege additional
facts establishing his entitlement to equitable tolling or to

---

[4]    The court takes judicial notice of state court records showing that the
KCA has since issued an opinion affirming denial of post-conviction relief to
Mr. Jones, and that petitioner filed a Petition for Review in the KSC on May
2, 2014, that is pending.  See *Jones* IV.

show cause why this action should not be dismissed as time-barred.

### A. *Timeliness*

In response to the court's show cause order, petitioner again argued that the untimeliness of the instant petition must be excused because he filed a petition and motion to stay in 2003 that are still pending. He invoked the prison mailbox rule and argued that the court must deem the file date of these pleadings as in 2003. In support, he provided the following allegations and exhibits. On March 28, 2003, he "handed his federal 2254 petition and Motion to Stay to exhaust state remedies" addressed to this court to a correctional officer at the Hutchinson Correctional Facility (HCF) for deposit in the prison's mailing system. He then concentrated on exhausting his state court remedies. He attached to the instant federal petition a copy of a two-page handwritten 2254 petition (Exh. J1), and a one-page handwritten "Motion to Stay and Abeyance" (Exh. J2). In his 2003 petition he set forth 7 claims regarding his waiver hearing. In his Stay Motion, he stated that he "need(ed) to exhaust 6 claims first in state court" because "direct appeal counsel was ineffective for failure to raise the claims on direct appeal." Both pleadings contain the following certification:

I Charles L. Jones # 69723 certify in compliance with

> 28 U.S.C. § 1746 I Charles L. Jones hereby declare
> true under penalty of perjury that the forgoing (2254
> petition/ Motion to Stay) is true and correct and was
> handed to the HCF prison correctional official
> officer, prepaid first class postage on March 28, 2003
> to be deposit (sic) in the prison mailing system in A
> Cellhouse for mailing to the Kansas federal district
> Court 444 SE Quincy, Topeka KS. 66683. Executed on
> March 28, 2003.

*Id.* Petitioner also attached to his federal petition a Form 9

"Inmate Request to Staff Member" (Doc. 1-1, Exh. G), on which he

wrote the date March 28, 2003, and the following request:

> Pleas confirm that I handed my 2254 legal mail
> petition prepaid first class postage to the H.C.F.
> correctional officer to put in the A Cellhouse mailbox
> to be mailed to the court on 3-28-2003.

The top half-portion of the form is signed by Mr. Jones and

James B. Haydon as the "Detail or C.H. Officer." The

"disposition" portion on the bottom half contains nothing other

than the word "Yes" in handwriting that appears different from

Haydon's signature. The lines for the date of disposition and

employee signature are blank, so that no date is indicated other

than that written by Mr. Jones. Petitioner also exhibited the

Affidavit of CSI James Haydon dated February 22, 2012 (Doc. 1-1,

Exh. K). In this affidavit, Haydon averred that he was a

correctional officer (CO) at the HCF on approximately March 28,

2003, and recalls that in administrative segregation (ad seg)

where Jones was housed,

> it was the Correctional facility policy for Jones to
> hand the correctional officer his 2254 legal mail

>petition to be placed in the prison mailing mailbox
>system for mailing to the courts.

He further averred that inmates in ad seg did not have direct access to the mail system and had to rely on a correctional officer to take their mail to the mailbox. He concluded, "so approximately on March 28th 2003 to the best of my knowledge" while Jones was housed in ad seg "he did comply with the prison mailing system policy rules." After the court issued its screening order, petitioner attached another affidavit from CO Haydon (Doc. 8-1, Exh. A) dated April 30, 2012, in which affiant verifies that the form 9 request "is what inmates use to verify that they requested information" from KDOC and that petitioner's exhibited form 9 "is accurate," his "signature at the bottom of the form 9 is also accurate,"[5] and he "did sign said form 9 on March 28, 2003." *Id.*

In their Response to the court's limited order to show cause, respondents contend that the instant petition is time-barred and disagree with petitioner's argument that he is entitled to a March 2003 file date. They assert that petitioner has presented no evidence to support his claim that he mailed a federal petition to this court in 2003, and that "the available evidence casts serious doubt on such a claim." In support, they proffer the following. The two pleadings on which Mr. Jones

---

[5]   The exhibit of the form 9 shows that Haydon's signature is not on the bottom of the form and that the line for a signature at the bottom is blank.

relies were produced by him and are not authenticated as to date or otherwise except by Mr. Jones. Neither is notarized or file-stamped "or otherwise affixed with any official indicia of the date." Petitioner's form 9 exhibit entitled "Inmate Request to Staff Member" (Doc. 1-1, Exh. G) was likewise prepared and dated by Mr. Jones and the disposition portion "bears nothing to support its authenticity." Haydon's first affidavit is nothing more than the officer's statement that petitioner complied with mail policies while in ad seg in March 2003 and is not a statement that Mr. Jones handed his two court documents to Haydon for mailing on a particular date.

Respondents advised that they asked HCF staff to search all their available records, but paper records from that time-frame had been destroyed per established policy. They provided an affidavit concerning computer records that track withdrawal and purchase order requests by inmates for legal postage showing none by petitioner on or about March 28, 2003, and only one in 2003 which was on February 23, and that Mr. Jones has used the institutional system for requesting postage for legal and official mail "many, many times" both before and after this date. They asserted that there is "no record that Petitioner mailed anything on March 28, 2003," and no evidence that the court received a federal habeas petition from Mr. Jones in 2003. Finally, respondents noted that petitioner "waited over nine

years after allegedly mailing his federal habeas petition to follow up on it," and argued that "it defies logic to believe that he would not at least check on the status" of his petition "to ensure that it arrived, that the proceedings were stayed as he asked, and to obtain a case number."

The court finds that Mr. Jones fails to establish that he is entitled to invoke the "prison mailbox rule." This rule, "as articulated by the Supreme Court in *Houston v. Lack*," 487 U.S. 266, 276 (1988), "holds that a pro se prisoner's notice of appeal will be considered timely if given to prison officials for mailing prior to the filing deadline, regardless of when the court itself receives the documents." *Price v. Philpot*, 420 F.3d 1158, 1163-64 (10th Cir. 2005)(citing see also Fed.R.App.P. 4(c)(1))(incorporating mailbox rule for an inmate's "notice of appeal in either a civil or a criminal case"). The Tenth Circuit "extended this mailbox rule beyond the notice of appeal context of *Houston*" and has "applied it . . . to a state prisoner's filing of a habeas petition under 28 U.S.C. § 2254." *Id.* at 1164-65 (citing *Marsh v. Soares*, 223 F.3d 1217, 1218 & n.1 (10th Cir. 2000)); see also *United States v. Ceballos-Martinez*, 387 F.3d 1140, 1143-44 (10th Cir.), *cert. denied*, 543 U.S. 1005 (2004).

To claim the benefit of the prison mailbox rule, a prisoner bears the burden of proving that the pleading in question was

filed timely.  *Price*, 420 F.3d at 1165.  There are only two ways a prisoner may establish timely filing. *Ceballos-Martinez*, 387 F.3d at 1143.  First, "if the prison has a legal mail system, then the prisoner must use it as the means of proving compliance with the mailbox rule." *Id.* at 1144.  Second, when the inmate does not have access to a legal mail system, the "mandatory method by which a prisoner . . . proves compliance with the mailbox rule" is to "submit a declaration [in compliance with 28 U.S.C. § 1746][6] or notarized statement setting forth the notice's date of deposit with prison officials and attest that first-class postage was pre-paid." *Id.* at 1145; see also *U.S. v. Gray*, 182 F.3d 762, 766 (10th Cir. 1999); *United States v. Smith*, 182 F.3d 733, 735 n. 1 (10th Cir. 1999)(refusing to apply mailbox rule to pro se inmate's notice of appeal because declaration of timely filing did not state that first-class postage had been prepaid).

While an inmate's personal declaration may be sufficient to invoke the prison mailbox rule when filing was delayed due to circumstances beyond the inmate's control; it is not sufficient standing alone to establish that a pleading to initiate a case that never reached the court was in fact surrendered for mailing.  When the alleged initial pleading never reached the

---

[6]     Compliance with 28 U.S.C. § 1746 requires a "declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated."  28 U.S.C. § 1746.

court, the petitioner must provide some substantiation beyond his personal declaration. Generally, when an inmate has handed legal mail to a prison official for mailing to a court, agency records are generated. Mr. Jones has not attached a copy of a prison log of outgoing mail, which might confirm that his legal mail was surrendered for mailing on a certain date. Respondents cannot be faulted for failing to provide the log because Mr. Jones waited for over 8 years to assert the mailbox rule, and the prison records were destroyed after 5 years. Mr. Jones does not present any prison document substantiating that he delivered pleadings for mailing to this court on March 28, 2003. His form 9 exhibit is inconclusive, at best. See *Hatch v. C.I.R.*, 364 Fed.Appx. 401, 403 (10th Cir. 2010). It is not a statement by CO Haydon that he received a federal habeas petition and motion to stay from Mr. Jones on March 28, 2003. In reply to respondent's arguments, Mr. Jones makes the new allegation that on March 28, 2003, he handed "a 60-1507 motion addressed to the juvenile court" to HCF correctional officer along with his 2254 petition and stay motion addressed to the federal court.[7] He also alleges that the KDOC does not have an adequate legal mailing system

---

[7]    This statement seems contrary to the record cited earlier indicating that Mr. Jones first 60-1507 motion was surrendered for mailing over a year later. As noted, when the KCA reversed the trial court for dismissing his 60-1507 motion as untimely, it found that the motion was submitted for filing between June 29, 2004, and July 9, 2004.
       If petitioner is now suggesting that he filed an earlier 60-1507 motion that disappeared along with his 2003 federal pleadings, this statement is completely unsubstantiated.

that keeps track of all legal mail sent to courts and that his exhibited Form 9 entitled "Inmate Request to Staff Member" was the only means available in ad seg to record his surrender of legal mail to HCF prison officials.  He refers to the latest affidavit of CO Hayden (Doc. 8-1, Exh. A), and argues that it verifies that he "handed his 2254 petition to the correctional officer to be mailed to the court on March 28, 2003."[8]

The court agrees with respondents that nothing about the hand-written habeas petition and stay motion exhibited by Mr. Jones establishes that these papers were created, signed, submitted for mailing, actually mailed, or filed in March 2003. Furthermore, federal court records are reliable proof that this petition and motion were neither received nor filed in this court in 2003.  Petitioner is indigent and alleges that he purchased the stamps at the commissary but presents no proof, such as commissary records, that he purchased either stamps or an envelope for this mailing.  On the other hand, his allegation that he obviously needed only two stamps for the mailing of three pages is reasonable.  Petitioner obtained affidavits from the very correctional officer that purportedly received his legal papers for mailing, but these statements are generic and provide no proof whatsoever that Mr. Jones handed a 2254

---

[8]    Petitioner's own statement in his exhibited "Inmate Request to Staff Member" is vague in that it does not specify a 2254 petition and a motion for stay to be mailed to federal court and a 60-1507 petition to be mailed to state court, but refers only to "my 2254 legal mail" and "the court."

petition and stay motion to Haydon on March 28, 2003. He claims that his exhibited form 9 proves that he submitted these particular papers for mailing to Haydon and that Haydon confirmed receipt of the papers by signing the form 9. However, as he himself later alleges (Doc. 17, pg. 2), the signature of the officer receiving the form 9 acknowledges receipt of the inmate request only. The form 9 does not show that Haydon wrote the "yes" on it or the significance of the "yes." Haydon's 2012 affidavit indicates that a form 9 request "is what inmates use to verify that they requested information" from prison officials and that Haydon signed the form 9 Inmate Request to Staff Member submitted by Mr. Jones on March 28, 2003, to verify that Jones requested such information. This does not amount to confirmation either that Mr. Jones handed his "2254 legal mail . . . to the H.C.F. correctional officer" or that petitioner's legal mail was received by Haydon.

In addition, when a case is received for filing by a federal court, records are routinely generated. Mr. Jones does not allege or show that he received a case number from the court or any acknowledgment that his 2003 pleadings were filed. Nor does he present evidence that he paid the filing fee or submitted a motion to proceed in forma pauperis, or that he received an order from the court requiring that he satisfy the statutory fee prerequisite. Since the filings were not received

by this court through the mail, there is no envelope with either a date-received stamp or a postmark.

Finally, the court notes that petitioner's case lacks the principal proof that is inherent in most, if not all, prison mailbox cases, which is the publicly-recorded fact that the pleadings in question were eventually received by the court and filed. The mailbox rule is concerned with a delay in filing a pleading and logically presumes a date of receipt by the court. See *Houston*, 487 U.S. at 275 ("Because reference to prion mail logs will generally be a straightforward inquiry, making filing turn on the date the pro se prisoner delivers the notice to prison authorities for mailing is a bright-line rule, not an uncertain one," while "[r]elying on the date of receipt, by contrast, raises difficult to resolve questions . . . ."). This case is distinguishable because the petition and motion which Mr. Jones claims he handed to a prison official for mailing in 2003 were not merely delayed but were never received and file-stamped by this court. See *Houston*, 487 U.S. 276 ([A]ny delays might instead be attributable to the prison authorities' failure to forward the notice (of appeal) promptly."). The purpose of the mailbox rule is to establish that a pleading actually received and file-stamped by a court should be deemed filed on an earlier date, usually a matter of days, when it was delivered to a prison official for mailing. Petitioner may not so easily

invoke an earlier file date on a pleading that was never actually filed. Another factor that generally underlies the mailbox rule is missing from this case because the court document allegedly submitted for mailing by Mr. Jones was a petition for writ of habeas corpus and not a civil action against prison officials. Thus, this case lacks the suggestion of incentive on the part of Officer Haydon to impede its filing.

Petitioner's actions since his alleged filing of a federal petition and motion in 2003 also indicate that his 2003 pleadings were not filed. The court agrees with respondents that petitioner's failure to inquire for over 8 years as to a federal petition he claims to have filed, particularly in light of his failure to receive any type of acknowledgement from the court, weighs heavily against application of the equitable mailbox rule. See *Stoot v. Cain*, 570 F.3d 669, 672 (5th Cir. 2009)("A failure to inquire about a lost petition is strong evidence that the petition was, in fact, never sent."); cf. *id. at* 672*; Allen v. Culliver*, 471 F.3d 1196 (11th Cir. 2006); *Huizar v. Carey*, 273 F.3d 1220, 1223 (9th Cir. 2001)(Principles of *Houston v. Lack* apply to pro se prisoner pleadings that never reached the intended recipient "so long as he diligently follows up once he has failed to receive a disposition from the court within a reasonable time."). Because petitioner failed to inquire about his federal petition or motion for several years,

16

he did not ascertain that they were not received and he could not alert this court to an unacknowledged 2003 petition or motion.  A reasonably diligent litigant would have advised the court years earlier that he had submitted a new case whose receipt had not been acknowledged and in which no order had been entered.  Petitioner's inaction prevented any timely corrective action.  Petitioner tries to explain his failure to inquire by alleging that he was busy exhausting claims in state court.  However, he does not explain his compunction to file a premature federal petition before he had fully exhausted state court remedies and yet total lack thereof to inquire as to its status after its receipt was not acknowledged and no action was taken on the matter for 8 to 9 years.

Finally, the court repeats for emphasis that even if Mr. Jones had actually filed a federal habeas corpus petition in 2003, the pendency of a federal petition does not toll the statute of limitations.[9]  It follows that the statute of limitations applicable to petitioner's case would still have run and expired on October 22, 2003.

The court concludes that petitioner has not met his burden of proving that he surrendered his exhibited federal 2254 habeas petition and motion to stay to prison officials on March 28, 2003, for mailing to this court, and that he is not entitled to

---

[9]    It is settled law that only a properly-filed state post-conviction action has such a tolling effect.

invoke the prison mailbox rule to establish the claimed file-date and pendency of these pleadings.  Because petitioner has no prior petition pending before this court, the instant petition does not relate back and was filed outside the one-year limitations period.  Accordingly, the court dismisses this federal petition as time-barred.

### B.  *Equitable Tolling*

The court further finds for similar reasons that Mr. Jones has not established that he is entitled to equitable tolling. As Mr. Jones was informed, "the timeliness provision in the federal habeas corpus statute is subject to equitable tolling," *Holland v. Florida*, 560 U.S. 2554 (2010).  However, a petitioner is entitled to equitable tolling only if he demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Id.* at 2562 (internal quotation marks omitted); *Burger v. Scott*, 317 F.3d 1133, 1141 (10th Cir. 2003)(citing *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000)); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000); see also *Clark v. Oklahoma*, 468 F.3d 711, 714 (10th Cir. 2006).  "Equitable tolling is appropriate, for example, when a prisoner is actually innocent, when an adversary's conduct-or other uncontrollable circumstances-prevents a prisoner from timely filing, or when a prisoner actively pursues judicial remedies but files a

defective pleading during the statutory period." *Gibson*, 232 F.3d at 808.  The burden is on a petitioner to demonstrate the circumstances that justify equitable tolling.  *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) ("'[A]n inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence.'")(citation omitted); see also *Miller v. Marr*, 141 F.3d 976, 977 (10th Cir. 1998).

Mr. Jones has not shown diligence in pursuing his rights as he claims.  He has not explained why he failed to file a tolling-type state post-conviction motion prior to late June or early July 2004, or why he would attempt to file a premature federal habeas corpus petition instead.  Nor has he adequately explained why he failed to inquire for over 8 years as to a federal petition and motion he claims to have filed.  He clearly does not allege circumstances beyond his control that would justify equitable tolling of the one-year limitation period.

Mr. Jones also fails to allege any additional facts indicating his actual innocence.  As he was previously informed, in order to qualify for the "actual innocence" exception, he must provide evidence of a "fundamental miscarriage of justice," meaning that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986).  That standard requires

petitioner to "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Mr. Jones provides no new evidence of his innocence. His arguments that constitutional errors occurred during his waiver hearing and trial are legal claims that his conviction should be overturned, not allegations of factual innocence.

### C. Exhaustion

The court has considered respondents' Motion to Dismiss in which they argue that the court should either dismiss this petition as time-barred or for failure to exhaust state remedies. In support of the latter argument, they called the court's attention to petitioner's pending state collateral appeal in *Jones* IV. Petitioner argues that "the issues he has pending in the state court are not included in his federal petition" and "are totally different." He also notes his filing of a motion for stay and abeyance in this action.

In *Jones* IV, the KCA summarized the numerous and varied issues raised by Mr. Jones throughout his state court challenges. *Id.* at *1-*2. In his instant federal petition, Mr. Jones raises 17 claims. Thirteen of those challenge the waiver

proceedings pursuant to which it was determined that he would be tried as an adult.   Mr. Jones challenged these proceedings and his certification as an adult on many grounds on direct appeal and in his first and second state post-conviction proceedings. His other claims in his federal petition concern his detention hearing and extradition from Iowa to Kansas, lack of notice to his parents, and hearsay testimony at trial.   In *Jones* IV that is currently pending review in the KSC, petitioner argued that his trial counsel was ineffective and that he was incompetent at the time of trial based on recent Supreme Court cases recognizing that juvenile brains are underdeveloped.   While he has provided those citations to this court and filed additional papers mentioning these issues, these claims are not listed in his federal habeas corpus petition.   In any event, the court finds that this petition is time-barred.   For that reason, respondents' Motion to Dismiss for failure to exhaust is denied as moot.


**MOTION FOR STAY AND ABEYANCE**

The court has considered petitioner's motion for stay and abeyance of the instant action (Doc. 20) and denies the motion. A habeas petitioner may seek a stay in order to exhaust claims raised in his original petition or that will relate back to that petition.   In order to be entitled to a stay he is required to

allege facts showing (1) that "good cause" exists for his failure to exhaust the unexhausted claims, and (2) that the unexhausted claims are "potentially meritorious" on federal habeas corpus review. *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005). Whether petitioner seeks a stay to exhaust claims already raised in the instant petition or new claims, he does not show good cause for his failure to have fully exhausted these claims prior to filing this action. Instead, he mainly argues the merits of his claims. More importantly, he cannot show that any unexhausted claims will be timely given that the instant petition is untimely. This motion may also be denied as moot.

## **CERTIFICATE OF APPEALABILITY**

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among

jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings.  *Slack v. McDaniel*, 529 U.S. 473 (2000)(citing *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)). In addition, when the court's ruling is based on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.  The court finds that a certificate of appealability should not issue in this case.  Nothing suggests that the court's ruling resulting in the dismissal of this action as time barred is debatable or incorrect.  The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently.  A certificate of appealability shall be denied.

**IT IS THEREFORE ORDERED** that a certificate of appealability is denied.

**IT IS FURTHER ORDERED** that petitioner's Motion for Stay and Abeyance (Doc. 20) is denied.

**IT IS FURTHER ORDERED** that respondents' Motion to Dismiss (Doc. 18) this action as time-barred is sustained, and that this habeas corpus petition is dismissed with prejudice as not timely filed.

IT IS SO ORDERED.

Dated this 19th day of August, 2014, at Topeka, Kansas.




                                    s/Sam A. Crow
                                    U. S. Senior District Judge